# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 23-2107V

|  |  |
|---|---|
| CHERRIE BROWER,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: April 27, 2026 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Elizabeth Andary, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On December 12, 2023, Cherrie Brower filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 22, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent conceded that Petitioner was entitled to compensation (ECF No. 19), but the parties were unable to resolve damages. The question of damages has now been

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website , and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

fully briefed and is ripe for resolution (ECF Nos. 27-29). For the reasons set forth below, I find that Petitioner is entitled to a damages award of **$120,000.00 for actual pain and suffering.**

## I.    Relevant Facts

### A.  Medical Records

Petitioner received a flu vaccine in her right deltoid at her place of employment on October 22, 2021. Ex. 1. A week later (October 29, 2021), she saw her primary care provider ("PCP") to report right shoulder and arm pain "in the context of flu shot given 7 days ago." Ex. 3 at 170. Petitioner was given prescription medication and home exercises. *Id*. at 171.

Three weeks later (November 19, 2021), Petitioner consulted an orthopedic nurse practitioner for right arm pain that had persisted since vaccination. Ex. 4 at 35. Her pain was worsening, and woke her at night. *Id*. She was assessed with acute pain of her right shoulder, and given a Toradol injection and oral steroid medication. *Id*.

On November 30, 2021, Petitioner saw an orthopedic surgeon for right arm pain that had begun after vaccination. Ex. 4 at 32. She now suffered from radicular symptoms and significant pain that woke her at night. *Id*. The medication her PCP provided helped some, and the injection and oral steroids from the nurse practitioner helped significantly with her radicular symptoms. *Id*. On examination, she exhibited reduced right shoulder range of motion ("ROM"), with positive Neer, Hawkins Kennedy, and empty can signs. *Id*. at 33. The orthopedist recommended physical therapy ("PT"), topical anti-inflammatory medications, Tylenol, and ice, noting that Petitioner was unable to take non-steroidal anti-inflammatory medications. *Id*. Petitioner was permitted to return to work without restrictions. *Id*.

Petitioner underwent a PT evaluation of her right shoulder on December 9, 2021. Ex. 2 at 9. She reported pain that began an hour or two after vaccination and later worsened. *Id*. She rated her pain four out of ten, ranging between two at best to six at worst. *Id*. On examination, her right shoulder active ROM was reduced compared to her left shoulder. *Id*.

Petitioner continued to follow up with her orthopedist, reporting on December 28, 2021 that PT seemed to be aggravating her symptoms. Ex. 4 at 29. The orthopedist ordered an MRI and modified work duties. *Id*. at 30. The MRI showed moderate to severe supraspinatus and infraspinatus tendinopathy, intermediate to high-grade partial-thickness tear of the supraspinatus and infraspinatus insertions, and moderate subacromial/subdeltoid bursitis. *Id*. at 40.

Petitioner's pain worsened as she continued PT. By January 12, 2022, she rated her pain seven out of ten, ranging from two at best to seven at worst, and she was discharged from PT. Ex. 2 at 42. Petitioner returned to her orthopedist on February 8, 2022 to review the MRI. Ex. 4 at 23. He administered a steroid injection in her right shoulder. *Id*. at 24. Petitioner resumed PT on February 21, 2022, at which time she was pain-free, with her pain ranging to four out of ten at worst. Ex. 2 at 46.

The following month (March 15, 2022), Petitioner followed up with her orthopedist, reporting that she was "significantly better."  Ex. 4 at 20. She could now engage in normal activities, and pain no longer woke her at night. *Id*. Her orthopedist said she could resume full work duties without restrictions. *Id*. at 21. She was discharged from PT on March 17, 2022 after a total of 13 pre-operative sessions. Ex. 2 at 76.

However, in mid-April Petitioner returned to her orthopedist because her symptoms had returned. Ex. 4 at 17. She experienced pain with certain motions, and sometimes woke at night due to pain. *Id*. Because Petitioner had tried a cortisone injection, PT, home exercises, and medication without relief, her orthopedist recommended surgery. *Id*. at 18.

On June 15, 2022, Petitioner underwent right shoulder arthroscopic rotator cuff repair, debridement of biceps with biceps tenotomy, and acromioplasty with coracoacromial ligament release. Ex. 4 at 63-65. Five days later (June 20, 2022), Petitioner underwent a post-operative PT evaluation. Ex. 2 at 84. She reported a pain level of two out of ten, ranging between zero at best to five at worst. *Id*.

Petitioner saw her orthopedist for a post-operative follow-up on July 26, 2022. Ex. 4 at 11. She was doing well, with no complaints. *Id*. She was directed to continue PT and discontinue wearing a sling. *Id*. at 12. She could return to work with restrictions. *Id*. When she followed up with her orthopedist the following month (August 23, 2022), she reported that one of her incisions had reddened and opened somewhat a few days before, with a small amount of drainage. *Id*. at 8. On examination, the orthopedist noted that Petitioner "appear[ed] to have had a reaction" to the sutures used in surgery. *Id*. at 9. He prescribed antibiotics and recommended continued PT. *Id*.

 On September 27, 2022, Petitioner returned to the orthopedist. Ex. 4 at 5. She had completed PT and was not in any pain, and was not taking any medication for her condition. *Id*. She felt she could perform her full work duties. *Id*. On examination, both shoulders exhibited full and symmetric active ROM, and impingement testing did not cause pain. *Id*. at 6. Her orthopedist stated that she was at maximum medical improvement, and could return to full work duties without restrictions. *Id*. Petitioner was discharged from PT after 27 post-operative sessions on September 29, 2022, at which time she was pain-free, with her pain ranging to one out of ten at worst. Ex. 2 at 193. Her therapist noted that she now had "minimal [shoulder] pain with all [activities of daily living] and work tasks, normal ROM and mild strength deficits." *Id*. at 195.

Petitioner's orthopedist wrote a letter dated October 7, 2022 concerning Petitioner's injury, apparently in connection with a worker's compensation claim. Ex. 5 at 15. He stated that at her last clinic visit, there were no objective clinical findings of impairment, and that he believed Petitioner had a "0% permanent partial impairment of the right shoulder." *Id*. He did not expect her to require further medical or surgical treatment for her injury. *Id*.

### B. Testimonial Statements

Petitioner submitted two declarations in support of her claim. Exs. 6, 7. She states that the first few months of her injury, before she received a steroid injection, were especially challenging. Ex. 6 at ¶ 1. Her entire right shoulder and arm hurt, and she could not extend her arm overhead or behind her back. *Id*. She was unable to sleep due to pain, and unable to dress herself, or even dry herself off after showering. *Id*. She could not fasten her seatbelt, and driving was a challenge. *Id*.

Petitioner's job required her to use a computer most of the day, which aggravated her arm and shoulder pain, as did writing by hand. Ex. 6 at ¶ 2. She was unable to help with dinner or many household chores. *Id*. She describes "severe pain that was unrelieved by any medication that was available to me." Ex. 7 at ¶ 2. She was not able to keep her part time second job because of her injury and limitations. Ex. 6 at ¶ 3. Petitioner states that she has a "17.5% disability rating" in her right arm, but does not explain the source of this rating. *Id*.

Petitioner explains that when she first went to PT, the exercises made her pain worse. Ex. 6 at ¶ 4. The cortisone injection "helped for a few weeks," but her pain and reduced mobility returned. *Id*. When she was finally approved for surgery, her use of her right arm was "very limited" due to pain and ROM restrictions. Ex. 7 at ¶ 4.

Petitioner describes her post-operative course as "slow but uncomplicated." Ex. 6 at ¶ 5. She describes the immediate post operative period as "brutal" after the nerve block wore off. Ex. 7 at ¶ 4. She called her surgeon to request additional medication to manage her pain. *Id*. She states she was in moderate to severe pain for the first three weeks after surgery. *Id*.

Petitioner was required to wear a shoulder immobilizer for six weeks, which limited her activity. Ex. 6 at ¶ 5. She states it took a year for her to recover from her injury: a year of pain, impaired mobility, decreased activities, loss of sleep, and loss of income from her second job. *Id*. at ¶ 6. She asserts that she continues to suffer effects in her activities and work, and is "in pain every day." Ex. 7 at ¶ 5. She takes medication to help her sleep. *Id*.

### II.    The Parties' Arguments

Petitioner seeks a pain and suffering award of $127,500.00, citing decisions in *Rafferty*, *Jackson*, and *Smith*, in which the claimants were awarded $127,500.00,

$125,000.00, and $125,000.00, respectively.[3] Petitioner's Damages Brief, filed Jan. 21, 2025, at *7-15 (ECF No. 27) ("Pet.").

Petitioner notes that her symptoms appeared almost immediately, and then progressed rapidly. Pet. at *9. Pain interfered with sleep and normal activities such as dressing herself and fastening her seatbelt. *Id*. Her injury limited her ability to perform her job duties, and forced her to give up a part-time second job. *Id*. at *9-10.

Petitioner's post-operative course was painful, and her pain was exacerbated by PT. Pet. at *10-11. She asserts that she continues to suffer from her injury to this day, taking medication to allow her to sleep. *Id*. at *12. She also asserts (without evidence) that treatment and surgery have not restored her to a level where she can reasonably anticipate being able to continue working until she qualifies for full social security retirement benefits. *Id*.

Respondent proposes an award of $95,000.00 in pain and suffering, citing in support *Hunt*, *Martin*, and *Felland*, in which the petitioners were awarded $95,000.00, $100,000.00, and $100,000.00, respectively.[4] Respondent's Damages Brief, filed Mar. 21, 2025, at *7-12 (ECF No. 28) ("Resp.").

Respondent describes Petitioner's injury as moderate, noting that she treated with arthroscopic surgery, prescription medication, a Toradol injection, a steroid injection, and 40 PT sessions over the course of just over 11 months. Resp. at *7. When Petitioner stopped seeking treatment in October 2022, her orthopedist opined that she had a "0% permanent partial impairment" of her right shoulder. *Id*. (citing Ex. 5 at 15). Respondent asserts that Petitioner's claim that she continues to suffer pain and require medication are not consistent with the medical records, emphasizing that there are no treatment records for her shoulder after her last PT session in September 2022. *Id*. at *7-8.

Respondent distinguishes the decisions Petitioner cites, asserting that the claimants in those cases consistently reported high levels of pain with only moderate relief from early treatment. Resp. at *10. In contrast, Ms. Brower experienced a significant improvement in pain and a return of full active ROM for two months after a steroid injection. *Id*. And Ms. Brower's post-surgical treatment course was shorter than the claimants in *Rafferty*, *Jackson*, and *Smith*. *Id*.

---

[3] *Rafferty v. Sec'y of Health & Human Servs.*, No.17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020); *Jackson. v. Sec'y of Health & Human Servs.*, No. 20-0051V, 2023 WL 4401125 (Fed. Cl. Spec. Mstr. June 2, 2023); *Smith . v. Sec'y of Health & Human Servs.*, No. 19-0745V, 2021 WL 2652688 (Fed. Cl. Spec. Mstr.).

[4] *Hunt v. Sec'y of Health & Human Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022); *Martin v. Sec'y of Health & Human Servs.*, No. 19-830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021); *Felland v. Sec'y of Health & Human Servs.*, No. 20-406V, 2022 WL 10724100 (Fed. Cl. Spec. Mstr. Sept. 6, 2022).

Respondent argues that Petitioner underwent a similar course of treatment to the *Hunt* petitioner, although with fewer steroid injections and more PT sessions. Resp. at *11. And both petitioners experienced nearly two months of relief from a steroid injection. *Id*. Petitioner and the *Martin* petitioner had similar treatment courses and duration, with both completing treatment three months after surgery. *Id*. at *11-12. The *Felland* claimant and Ms. Brower had similar injury durations and treatment. *Id*. at *12.

On reply, Petitioner takes issue with Respondent's characterization of her injury as moderate, noting that she treated with surgery, injections, dozens of PT sessions, and medications. Petitioner's Reply, filed Apr. 7, 2025, at *1-2 (ECF No. 29) ("Reply"). Even accepting this characterization, Petitioner points out that in all three decisions Respondent cites, the petitioners' injuries were described as mild or mild to moderate – not moderate, as Respondent concedes describes Ms. Brower's injury. Reply at *2. And Petitioner asserts that her injury was worse, citing lack of sleep disturbance and treatment gaps in *Martin* and a treatment gap and pre-existing condition in *Felland*. *Id*. at *3. The *Hunt* petitioner was noted to have suffered a mild to moderate injury for the first six weeks, and mild thereafter. Reply at *3-4. Petitioner adds that I have described *Hunt* as an "outlier." *Id*. at *4. n.1.

### III.    Legal Standard

In another recent decision, I discussed at length the legal standard applicable to determinations of damages, as well as prior SIRVA compensation decisions within SPU. I fully adopt and hereby incorporate my prior discussion in Section II of *Staub v. Sec'y of Health & Human Servs*., No. 23-1611V, 2026 WL 800520 (Fed. Cl. Spec. Mstr. Mar. 4, 2026).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs*., No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

---

[5] *I.D. v. Sec'y of Health & Human Servs*., No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### IV. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

Petitioner suffered a moderate SIRVA that resolved in just over 11 months. Although she testified that her pain and need for medication to sleep persisted for years beyond that point, she was discharged from treatment as of late September 2022, with her orthopedist opining that she did not have any permanent disability. And during the 11-month duration of her injury, she consistently sought care, with no gaps in treatment.

Petitioner's treatment included arthroscopic surgery, a total of 40 PT sessions (13 pre-operative and 27 post-operative), a cortisone injection, a Toradol injection, medications, and home care. Her pain levels ranged from zero to seven out of ten. Her pain worsened somewhat during her first round of PT.

Petitioner sought treatment for her injury just a week after vaccination, suggesting a more concerning injury and/or significant impact on her life. She obtained a couple of months of relief from a steroid injection, but it was temporary. She was unable to take non-steroidal anti-inflammatory medications, a common treatment for this type of injury, limiting her pain-relief options. She experienced a minor surgical complication, which resulted in a course of antibiotics. She experienced good relief from surgery, and was pain-free three and a half months after surgery.

Of the cited decisions, the most similar to Petitioner's injury are *Rafferty* and *Jackson*. Both involve injuries of similar duration and treatment (including surgery), with some variation. The *Jackson* petitioner's injury persisted for slightly longer. Ms. Brower sought care much sooner than either of those claimants. The *Jackson* and *Rafferty* claimants experienced somewhat more severe pain than Ms. Brower.

Petitioner underwent two injections, one steroid and one Toradol, compared to none for the *Rafferty* petitioner and two steroid injections for the *Jackson* petitioner, and Ms. Brower attended more PT than either of them. Ms. Brower and the *Jackson* claimant both experienced surgical complications, though Ms. Brower's was less serious. Although I acknowledge some similarities to *Felland* and *Martin*, they involve milder injuries. And *Hunt* is of little relevance to this case.

Accordingly, I find that an award of **$120,000.00** for pain and suffering is appropriate.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $120,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering**.[6]

Based on consideration of the record as a whole and arguments of the parties, **I award Petitioner a lump sum of $120,000.00, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.